Frank W. Volk, Chief Judge
United States Bankruptcy Court
Southern District of West Virginia

Dated: September 30th, 2018

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| IN RE: | CASE NO. 2:06-bk-20225 |
|---|---|
| RICHARD EICHERT HARDISON and MARY ANN HARDISON, | CHAPTER 7 |
| Debtors. | JUDGE FRANK W. VOLK |

**MEMORANDUM OPINON AND ORDER
REGARDING RECONVERSION TO CHAPTER 13**

This matter is on remand following the September 5, 2017, appellate judgment of the United States District Court. The District Court reversed the predecessor bankruptcy judge's order denying the Debtors, Richard Eichert and Mary Ann Hardison's, motion to reconsider conversion, or in the alternative, to reconvert to Chapter 13. The case was remanded for further proceedings concerning whether reconversion to Chapter 13 is appropriate.

**I.**

**A.    Procedural Posture**

The Hardisons filed their Chapter 13 bankruptcy on April 27, 2006.  Seven (7) years passed without confirmation of a Chapter 13 Plan.  The Court eventually converted the Hardisons' case to one under Chapter 7 on December 12, 2013.

The Hardisons moved to reconsider on January 15, 2014. The undersigned's predecessor denied reconsideration on February 14, 2014. The Hardisons appealed. On September 5, 2017, the case was remanded "for further proceedings on whether reconversion to chapter 13 is appropriate in this case." (*Hardison v. Morris*, 2:14-23820, slip op. at 9 (S.D. W. Va. Sept. 5, 2017); *see id.* at 9 (stating remand was granted "for further proceedings regarding whether reconversion to chapter 13 is appropriate in this case.").

The Court held a status hearing following remand and requested further briefing from the parties. That briefing was submitted. The matter is ripe for adjudication.

**B.     Factual Background Relevant to the Decision on Remand**

On April 27, 2006, the same day they faced a foreclosure sale, the Hardisons filed their Chapter 13 petition *pro se*. They listed their estimated assets between $500,001 and $1 million. They pegged their estimated debts at $100,001 and $500,000. The Petition listed only a two-story house and a single secured creditor (BB&T Mortgage). A proposed Chapter 13 Plan was due May 12, 2006.

A show cause hearing was held May 24, 2006, inasmuch as the Hardisons failed to file a proposed plan, completed schedules and other documents. The Hardisons were given one week to retain counsel, with the show cause hearing being advanced to June 7, 2006. When the advanced date arrived, the Hardisons did not appear. They also did not heed the Court's earlier instructions. They filed schedules and failed to retain counsel. They also neglected to file their credit counseling certificate and made no Chapter 13 plan payments. The Court dismissed the case on June 12, 2006.

The Hardisons moved to reopen their case on June 26, 2006. The Court held a hearing on August 2, 2006. The motion to reopen was held in abeyance pending the Hardisons (1) filing an amended motion to reopen, (2) retaining experienced bankruptcy counsel, and (3) filing their missing documents, which included a proposed Chapter 13 Plan and credit counseling certificate. The requirements were met but the Hardisons' credit counseling certificate indicates that they received credit counseling on July 28, 2006, ninety-two (92) days after filing their petition.[1] The Hardisons moved several times to extend time to file their schedules and participate in credit counseling due to hospitalizations. No extensions were ever granted.

Also noteworthy is that the Hardisons' petition indicated they had not filed a bankruptcy case within the prior eight (8) years. In fact, however, the Hardisons filed an earlier Chapter 13 petition on May 23, 2005, which was dismissed on December 7, 2005, as a result of their failure to file a proposed Chapter 13 Plan. Their amended schedules, filed by counsel on August 10, 2006, acknowledge this prior case.

The Hardisons history in Chapter 13 is littered with failed to attempts to plot a workable way forward. They filed three separate proposed plans -- on August 2, 2006, October 16, 2006 and May 30, 2013 -- with each offering monthly payments of $210.00 [Dckts. 35, 65 & 383]. In the ninety-two (92) months that they were in Chapter 13, however, none of the plans achieved confirmation. They additionally missed promised payments during the life of their case.

---

[1] This arguably fatal oversight was discovered independently by the Court on remand. An Order to Show Cause issued on February 2, 2018, directing the Hardisons to demonstrate in writing on or before February 9, 2018, why their bankruptcy case should not be dismissed for failure to timely complete credit counseling as required by 11 U.S.C. § 109(h). The Court has ultimately determined that it will, in obedience to the mandate rule, simply leave the default of record to be addressed, if at all, during any future appellate proceedings.

On December 10, 2013, after seven long years in Chapter 13 with little success, the Court converted the case to Chapter 7.

## II.

### A.    Governing Standard

"When determining whether cause exists to warrant a dismissal or conversion, a bankruptcy court retains 'broad discretion.'" *Jackson v. United States ex. Rel. IRS (In re Jackson)*, 1997 U.S.App. LEXIS 21365 (4th Cir. 1997) (citing *In re Woodbrook Assoc.*, 19 F.3d 312, 316 (7th Cir. 1994)). This discretion derives from the equity branch but is, of course, constrained by the Code and its accompanying Rules. *Official Comm. Of Unsecured Creditors of Cybergenics Corp. ex. Rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 567 (3d Cir. 2003); *see, e.g.*, *Young v. United States*, 533 U.S. 43 (2002). And the Code strikes a balance between the rights of debtors to a fresh start and the rights of creditors to collect on debts owed to them. *See Janvey v. Romero*, 883 F.3d 406, 411 (4th Cir. 2018).

In accordance with this discretion, and the guidance of the District Court in its fine September 5, 2017, opinion, the Court now turns to the whether reconversion is appropriate. The framework for the analysis is the Hardisons' arguments in support and the responses in opposition submitted by various parties.

### B.    Analysis

First, the Hardisons note the income generated by their coal mining leases in Mingo County will aid them in confirming a Chapter 13 Plan and getting it across the finish line. But, as the Trustee notes, this income was available to the Hardisons in their previous Chapter 13

4

proceedings but they chose to assign it to United Bank. Aside from that, the properties are not included in the five-year mining plan presented by the leaseholders. The leases are thus expected, at best, to generate only $34,000 a year. The Hardisons' rough accounting otherwise notwithstanding, this amount appears insufficient to pay off creditors with priority and secured claims in a Chapter 13 case. That is so inasmuch as the prognostication does not take account of other costs that would diminish funding for a Chapter 13 plan, including Chapter 7 trustee's fees, the mortgage debt on their residence, their living expenses, and the taxes owing annually on the royalty income. The final consideration is especially troubling inasmuch as the Hardisons have in the past demonstrated a startling dismissiveness for their tax obligations. It is also the case that the properties are subject to one-year leases. There is also no certainty that the leases will be renewed in any of the next five years. That portends a repeat of the now all-to-familiar failures of the Hardisons in their prior Chapter 13 case.

Second, the Court must consider the history of the Hardisons' reorganization attempts. The instant case is of unprecedented length. Twelve years have elapsed since the Hardisons first filed. During the Chapter 13 portion, as noted, three proposed plans were offered and none were confirmable. This necessarily gives rise to grave concerns respecting the Hardisons' ability to turn the tide. Indeed, the saga of this case is one suggesting "a mechanism to 'buy time' by those with no realistic chance of" satisfying the requirements of Chapter 13. *In re Jackson v. U.S., On Behalf of I.R.S.*, 1997 WL 746763, at *5 (4th Cir. Dec. 4, 1997). That will not do.

Third, the Hardisons have not displayed an intent to perform as good-faith Chapter 13 debtors. A significant portion of their debt is a secured claim on property they own and occupy. The core of their reorganization theory was a sale to help fund a Chapter 13 plan. But they rejected

5

two offers for the property which would have completely satisfied the outstanding secured debt. Indeed, one was countered with a price more than 150% of the offer. The length of time without a sale -- and the rejection of two satisfactory offers -- suggest that the Hardisons entertain no desire to sell and hence no good-faith intention to pursue reorganization under Chapter 13.

Fourth, without such a sale, a confirmable plan seems impossible. Any plan would have to contend with the debt and arrearage on the property. Coupled with that concern is the fact that the Hardisons have not made a payment on their mortgage since 2006. They are twelve years in arrears and, even if every dollar of the lease income were contributed to a proposed plan, they would not be able to retire the debt on the property and the priority tax claims within 60 months.

Fifth, there are additional markers of noncompliance with Chapter 13 suggestive of the Hardisons' failure to appreciate the privilege of proceeding thereunder. Foremost, they neither (1) regularly maintained plan payments, nor (2) timely filed tax returns and amended schedules.

In sum, the uncertain nature of the lease payments, the length of the proceedings without a confirmed plan, the apparent lack of good faith throughout the history of the Chapter 13 proceeding, the refusal of offers on the property suggested for sale, and the other failures to comply with Chapter 13 demonstrate, beyond peradventure, that the Hardisons were not -- and are not -- serious about succeeding in Chapter 13.

As aptly suggested by the Trustee, bankruptcy courts are meant to balance the rights of the debtors and creditors in equity. *See Harris v. Boston Private Bank & Trust Co.*, 497 B.R. 652 (Bankr. D. Mass. 2013). Thus far, the protections afforded the Hardisons have utterly eclipsed those available to the creditors. It is in the overriding interest of all parties involved for the proceedings to continue in Chapter 7 and there reach a just and final conclusion.

The Hardisons' request to convert the case from a Chapter 7 back to a Chapter 13 is hereby **DENIED**.