Frank W. Volk
United States District Judge

**Dated: March 31st, 2020**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## AT CHARLESTON

| IN RE: | CASE NO. 2:06-bk-20225 |
|---|---|
| RICHARD EICHERT HARDISON and MARY ANN HARDISON, | CHAPTER 7 |
| Debtors. | JUDGE FRANK W. VOLK |

### MEMORANDUM OPINION AND ORDER GRANTING RELIEF FROM STAY

Pending is Creditor Land Home Financial Services' Motion for Relief from the Automatic Stay [dckt. 623] (the "MFR"), filed December 17, 2018.

The Hardisons filed a Response to the MFR on January 9, 2019 [dckt. 628]. A preliminary hearing was held January 16, 2019, which was continued to a final hearing. On April 25, 2019, Land Home Financial Services ("Land Home") filed a Supplement to its MFR [dckt. 647]. The Debtors responded thereto on April 29, 2019 [dckt. 650]. The final hearing was held July 24, 2019. At that time, the parties presented argument, witness testimony, and exhibits. The Court ordered post-hearing briefs and responses, which were due August 14, 2019, and September 4, 2019, respectively. All filings have been received. The matter is ready for adjudication.

### I.

**A.**  **Procedural Posture**

The Hardisons filed their Chapter 13 bankruptcy on April 27, 2006. Seven (7) years passed without confirmation of a Chapter 13 Plan. The Court eventually converted the Hardisons' case to one under Chapter 7 on December 12, 2013.

In the meantime, multiple motions for relief from stay were filed concerning the subject property. On January 24, 2008, BB&T, the noteholder at that time, moved for stay relief. The arrearage then existing was $96,987.34; the note balance was $348,288.23. That motion was eventually withdrawn in September 2008. On July 17, 2013, Selene Finance LP ("Selene"), as servicer at that time, filed a Motion for Relief from Stay on the subject property [dckt. 400]. The undersigned's predecessor held a trial on Selene's Motion for Relief on September 11, 2013, at which time the matter was taken under advisement. The motion was never adjudicated. When the case converted in December 2013, the Court continued Selene's motion pending review and evaluation by the Chapter 7 Trustee. Again, the motion was never adjudicated. For clarity's sake, it is **ORDERED** that Selene's Motion for Relief from Stay [dckt. 400] be, and is hereby, **DENIED**.

The Hardisons moved to reconsider the conversion to Chapter 7 on January 15, 2014. The undersigned's predecessor denied reconsideration on February 14, 2014. The Hardisons appealed. On September 5, 2017, the case was remanded "for further proceedings on whether reconversion to chapter 13 is appropriate in this case." *Hardison v. Morris*, 2:14-23820, slip op. at 9 (S.D. W. Va. Sept. 5, 2017). The Court entertained briefing prior to entering its decision, and the Hardisons filed amended schedules on September 24, 2018.

On September 30, 2018, the Court entered its Memorandum Opinion and Order denying the Hardisons' request to convert their case from Chapter 7 to Chapter 13. Following that decision, Land Home filed the instant MFR.

**B.    Factual Background**

Richard and Mary Ann Hardison financed a $350,000 real property purchase with One Valley Bank, N.A., on May 24, 1991. The obligation is memorialized in a note recorded and re-recorded in Kanawha County on May 24 and June 5, 1991. Repayment of the note was secured

by a first-priority mortgage on the Hardisons' home, 6 Wildacre Road in Charleston. The mortgage was assigned several times and is currently serviced by Land Home.

On April 27, 2006, the same day they faced a foreclosure sale, the Hardisons filed their Chapter 13 petition *pro se*. They listed their estimated assets between $500,001 and $1 million. They estimated their debts between $100,001 and $500,000. The petition listed only a two-story house and a single secured creditor (BB&T Mortgage). The Hardisons valued the home at $600,000 and claimed full interest in the property. A proposed Chapter 13 plan was due May 12, 2006.

A show cause hearing was held May 24, 2006, inasmuch as the Hardisons failed to file a proposed plan, completed schedules, and other documents. The Hardisons were given one week to retain counsel, with the show cause hearing being advanced to June 7, 2006. When the advanced date arrived, the Hardisons did not appear. They also did not heed the Court's earlier instructions. They filed schedules but failed to retain counsel. They also neglected to file their credit counseling certificate and made no Chapter 13 plan payments. The Court dismissed the case on June 12, 2006.

The Hardisons moved to reopen their case on June 26, 2006. The Court held a hearing on August 2, 2006. The motion to reopen was held in abeyance pending the Hardisons (1) filing an amended motion to reopen, (2) retaining experienced bankruptcy counsel, and (3) filing their missing documents, which included a proposed Chapter 13 plan and credit counseling certificate. The requirements were met but the Hardisons' certificate indicated that they received credit counseling on July 28, 2006, ninety-two (92) days after filing their petition.[1] Owing to

---

[1] This arguably fatal oversight was discovered independently by the Court while the matter of reconversion was on remand from the District Court. An Order to Show Cause issued on February 2, 2018, directing the Hardisons to demonstrate in writing on or before February 9, 2018,

hospitalizations, the Hardisons moved several times to extend time to file their schedules and participate in credit counseling. No extensions were ever granted. Their case was eventually reinstated in February 2007.

Also noteworthy is that the Hardisons' original petition indicated they had not filed a bankruptcy case within the prior eight (8) years. In fact, the Hardisons filed an earlier Chapter 13 petition on May 23, 2005, which was dismissed on December 7, 2005, as a result of their failure to file a proposed Chapter 13 plan. Their amended schedules, filed by counsel on August 10, 2006, acknowledge this prior case.

The Hardisons' history in Chapter 13 is littered with failed attempts to plot a workable way forward. They filed three separate proposed plans -- on August 2, 2006, October 16, 2006, and May 30, 2013 -- with each offering monthly payments of $210.00 [dckts. 35, 65 & 383]. In the ninety-two (92) months that they were in Chapter 13, however, none of the plans achieved confirmation. They additionally missed promised payments during the life of their case. On December 10, 2013, after seven (7) long years in Chapter 13 with little success, the Court converted the case to Chapter 7.

Over the life of this case, the Hardisons have filed a multitude of amended schedules. The ones discussed herein are the only schedules which relate to the note and the subject property. As noted above, the Hardisons' original schedules valued their residence at $600,000 and indicated that they alone owned the home. Subsequently, their next amendment on May 30, 2006, raised the value of their home to $800,000. The three amendments following

---

why their bankruptcy case should not be dismissed for failure to timely complete credit counseling as required by 11 U.S.C. § 109(h). The Court ultimately determined that it would, in obedience to the mandate rule, simply leave the default of record to be addressed, if at all, during any future appellate proceedings. The Court notes, however, that this default is simply one of many in this long-pending matter.

thereafter maintained the $800,000 value and indicated that Mrs. Hardison alone possesses a one-half interest in the home, with the other half held by their two sons, Richard E. and John B. Hardison.

On the opposing side, the lender and similarly interested parties have filed several amended proofs of claim for the mortgage and mortgage arrearage. BB&T filed the original proof of claim ("POC") on May 19, 2006. It claimed $302,639.73, with a pre-petition arrearage of $35,165.10. BB&T filed the first amended POC on November 16, 2010, listing $301,207.02 as the claim amount, and an adjusted pre-petition arrearage of $26,546.47. After assignment, Selene submitted the second amended POC on May 1, 2013. This POC was identical to BB&T's second POC in both the amount due and the pre-petition arrearage. The most recently filed POC was submitted by Trifera, LLC (for which Land Home is servicer), and echoed the amounts on the previous POCs, namely, $301,207.01 due at the time of filing and $26,546.47 in pre-petition arrearages.

According to the MFR, the Hardisons' mortgage note is in practically irretrievable default. Their last remittance was the September 2005 payment, over fourteen years ago. As of December 17, 2018, the unpaid principal balance was $279,499.02. Additionally, there is accrued interest of $268,470.63, escrow advances of $97,826.32, delinquent property taxes of $4,848.61, and late fees of $1,242.20. As of December 17, 2018, the payoff is $651,659.55.[2]

In response to the MFR, the Hardisons first allege that they do not know how much they owe on their mortgage. They claim that there was a pending lawsuit in the Circuit Court of Kanawha County challenging BB&T's original claim to payment and alleging violations of the

---

[2] This reflects the subtraction of $693.83 as "funds owed to the borrower," according to the MFR.

5

West Virginia Consumer Credit Protection Act. The state law claim asserted that BB&T failed to credit payments made. The Hardisons additionally note that the Chapter 7 Trustee has not abandoned any interest in the subject property and assert that the Trustee's intentions should be disclosed prior to any stay relief. The Hardisons note also that they are ailing and elderly and require the residence.[3]

Land Home filed a supplement to the MFR on April 25, 2019, wherein it simply noted that the deed of trust was transferred to Land Home as authorized servicer for Isanthes, LLC. In response thereto, the Hardisons claimed the MFR hearing in combination with the supplement violated *Federal Rule of Bankruptcy Procedure* 3001(e)(2). The Hardisons question the assignment forms attached to the supplement, noting that all are signed and notarized by the same individual and asserting that they are all unclear respecting the identities of the assignor and assignee. The Hardisons additionally (1) seem to challenge the assignment and transfer of their mortgage, (2) allege inconsistencies between the proofs of claim and the MFR, assertedly giving rise to a *Rule* 3001 violation, (3) contend the subject property is valued at more than $301,000, contrary to that stated in claim 6-4, and, (4) again, state that the home is "necessary for their existence" given their ages and infirmities.

C.   **Evidence Presented at Hearing**

The arguments and evidence tendered at the final hearing on the MFR generally mirror the filings. Land Home called its employee Bruce Skinner. He reviews loan payoffs and

---

[3] It is noteworthy that the Hardisons advance two opposite positions simultaneously; while they assert that there is enough equity to forestall stay relief, they likewise assert that no interest should be accruing inasmuch as Land Home posits it is undersecured. But the question of post-petition accrued interest is frankly a pittance compared with their principal payment defaults and balance.

6

summaries daily. He reviewed the Hardisons' file prior to his testimony, and discussed the payoff statement, explaining that the differences in the claim 6-4 and the MFR amounts were attributable to accruing interest and arrearages post-filing. Land Home termed the Hardisons' argument otherwise a "red herring" and noted it is not mandatory for creditors to update proofs of claim to reflect interest and arrearage accrual after the filing date. The Court, after noting that the objection should have been the subject of a *motion in limine*, provisionally overruled the Hardisons' objection, but explained that it would study the matter further and decide whether Land Home had an obligation to file an amended proof of claim. The Hardisons also objected to any kind of interest accrual inasmuch as Land Home had been asserting that it was undersecured and thus unable to accumulate post-petition interest.

On cross examination, Mr. Skinner testified that his information originated with the Land Home data system and that, while he personally did not review proof of claim 6-4, the individuals calculating the payoff amount for Land Home would have studied the document. He also explained that the Land Home records do not reflect any recent appraisals of the subject property.

**D.    The Hardisons' Arguments**

Following the July 24, 2019, hearing, the Court instructed the parties to file post-hearing briefs and responses. Both parties complied. The Court has attempted to distill the information contained in the Hardisons' filings below:

1. **NOTICE OF TRANSFER**: Relief from the automatic stay is inappropriate because Land Home filed a Notice of Transfer just six days prior to the hearing on the MFR, the assignment documents in the Notice of Transfer are unclear, and the entities involved in the transfers appear to be related parties.

7

2. **KANAWHA COUNTY LAWSUIT AND WVCCPA VIOLATIONS**: Relief from the automatic stay is inappropriate because "there was a pending lawsuit in the Circuit Court of Kanawha County, West Virginia wherein the Debtors challenged BB&T's claim . . . [and] asserted [] violations of the West Virginia Credit Protection Act." [Dckt. 628, par. 1]. The Hardisons claim the lawsuit obscures the amount owed. They also assert stay relief is inappropriate because the late fees Land Home charged violate West Virginia law.

3. **SKEPTICISM RESPECTING THE DEBT AMOUNTS**: Relief from the automatic stay is inappropriate inasmuch as the calculations of principal and interest are allegedly incorrect and there is insufficient information to verify that the interest payment and real property tax accruals are correct. They also fault Land Home's failure to file official Notices of Post-Petition Mortgage Fees, Expenses and Changes pursuant to *Rule* 3002.1, which would have included late charges, attorney fees, tax advances, and insurance advances.

4. **CHAPTER 7 TRUSTEE ABANDONMENT**: Relief from the automatic stay is inappropriate because the Chapter 7 Trustee has not abandoned the property. The Hardisons argue that the Chapter 7 Trustee must make an official determination regarding abandonment before the stay may be lifted.

5. **AGE AND HEALTH CONSIDERATIONS**: Relief from the automatic stay is inappropriate because the Hardisons are ailing and elderly and their very existence depends on their ability to remain in their home.

6. **FAILURE TO PROVIDE A VALUE IN THE MFR**: Relief from the automatic stay is inappropriate because the MFR did not allege any property value. While the Hardisons omit any source of authority to support their assertion, they appear to rely upon Local Rule

4001-1, which states that a motion for relief from the automatic stay must list the estimated value of the subject property.

7. **ASSIGNEE RIGHTS**: Relief from the automatic stay is inappropriate because Land Home is only entitled to assert a claim for payment of the amounts listed in the POC. This follows from the Hardisons' legal theory that the assignee only receives what rights the assignor could pass to it under West Virginia law.

8. **ADMINISTRATIVE CLAIM FOR POST-PETITION ACCRUALS**: Relief from the automatic stay is inappropriate inasmuch as Land Home has not made an administrative claim for post-petition interest, fees, or both, so those cannot be added to the outstanding balance of the debt when calculating whether equity exists in the property for purposes of adequate protection. The Hardisons also contend that Land Home never amended the POC to include these post-petition amounts, leaving it with a right to payment of $371,186.22.

9. **VALUATION OF THE COLLATERAL**: The Hardisons assert that their interest is valued in excess of $301,000, which means that the total value of the property would be at least $602,000 and they thus have equity. Part and parcel of this argument is the Hardisons' assertion that the value used for stay relief consideration should be the value of the collateral at the time of filing.

10. **MISCELLANEOUS CONTENTIONS**: The Hardisons first note the rule requiring the claim holder to submit notices detailing any change to the payment amount or any fees or expenses incurred in connection with the claim after filing. Second, they assert that relief from the automatic stay is inappropriate inasmuch as the amount of the debt listed in the MFR is inconsistent with the amount listed in the POC.

## II.

**A.    Legal Standard**

One of the fundamental elements of bankruptcy protection is imposition of the automatic stay. Section 362(a) of the Bankruptcy Code prohibits any act to obtain possession of estate property after a debtor has filed for bankruptcy protection. Property co-owned by a debtor and a non-debtor (such as the subject property) is part of the bankruptcy estate and is thus protected by the automatic stay. *See In re Roberge*, 188 B.R. 366, 368 (E.D. Va. 1995).

However, in certain situations, the stay may be lifted to allow entities to proceed against a Debtor or property of a Debtor. According to § 362(d)(1), "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section . . . (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . ." 11 U.S.C. § 362(d)(1) (2012). The party requesting relief has the burden of proof regarding the debtor's equity in the subject property, while the burden of proof on all other issues rests with the party resisting the relief. *Id.* § 362(g)(1)-(2). However, if a "creditor establishes a history of failing to make payments, the burden then shifts to the debtor to show why automatic relief should not be granted." *McCullough v. Horne (In re McCullough)*, 495 B.R. 692, 695 (W.D.N.C. 2013).

The meaning of the word "cause" is left undefined in the Code and has thus historically been interpreted on a case-by-case basis. *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992). Importantly, "Congress . . . has granted broad discretion to bankruptcy courts to lift the automatic stay to permit enforcement of rights against property of the estate." *Ivester v. Miller*, 398 B.R. 408, 425 (M.D.N.C. 2008) (quoting *Claughton v. Mixson*, 33 F.3d 4, 5 (4th Cir. 1994)). The existence of adequate protection is a multifaceted question and courts have considered many

factors in deciding whether a creditor is adequately protected: the existence of an equity cushion, the declining value of the subject property, the non-payment of real estate taxes, lack of insurance, and the amount of payments made on the mortgage (including the lack of payments made since the filing of the petition). *Equitable Life Assurance Soc'y v. James River Assocs.* (*In re James River Assocs.*), 148 B.R. 790, 796-97 (E.D. Va. 1992); *McCullough*, 495 B.R. at 696. "A debtor's history of making or failing to make payments under a bankruptcy plan, as well as its history of payments under a promissory note, are both significant when determining whether there is adequate protection." *McCullough*, 495 B.R. at 695. Some courts have asserted that, "[t]ypically, however, cause will only be found where the failure to make monthly payments corresponds with a nonexistent equity cushion." *James River*, 148 B.R. at 797.

**B.     Analysis**

The Court analyzes briefly a number of the Hardisons' defensive contentions. To the extent any argument is not specifically covered, it was subject to summary adjudication consistent with the ultimate result reached within.

**1.     Notice of Transfer**

During the hearing held on July 24, 2019, the Court granted Land Home's Motion to Substitute Party. This argument against stay relief is moot.

**2.     Kanawha County Lawsuit and Potential Violations of the WVCCPA**

The Hardisons next reference a once-pending circuit court lawsuit against BB&T. They offer neither a case number nor any information about its status, outcome, or the putative effect here. The assertion is too slender a reed upon which to deny stay relief.

11

### 3. The Hardisons' Skepticism of the Debt Amounts

The Hardisons assert Land Home's calculations are incorrect, and that more information is needed before they might agree with Land Home's interest and tax charges. Inasmuch as they provide no supporting evidence of their own, nor can they point to any amount which they believe to be incorrect, this assertion likewise lacks the force to deny stay relief.

### 4. Chapter 7 Trustee Abandonment

The Hardisons next contend that the Chapter 7 Trustee's failure to formally abandon the subject property prevents stay relief. The case was converted to one under Chapter 7 in late 2013. At no point during the ensuing years did the Chapter 7 Trustee attempt to market, sell, or take any action on the property. Nor has the Chapter 7 Trustee attempted to prevent Land Home from obtaining a lifting order. Had the Chapter 7 Trustee believed the property held value for the unsecured creditors, he would doubtless have acted.

Additionally, lifting the stay is not analogous to abandonment and would not prevent the Chapter 7 Trustee from pursuing the Estate's interest in the collateral. *Lange v. Schropp (In re Brook Valley IV)*, 347 B.R. 662, 671 (8th Cir. B.A.P. 2006); *see also Catalano v. Comm'r of Internal Revenue*, 279 F.3d 682 (9th Cir. 2002); *In re Scott*, No. 00-10993C-7G, 2002 WL 1284281 (Bankr. M.D.N.C. June 3, 2002). In fact,

> [r]elief from an automatic stay entitles the creditor to realize its security interest . . . in the property, but all proceeds in excess of the creditor's interest must be returned to the trustee . . . . Thus, an order lifting the automatic stay by itself does not release the estate's interest in the property and the act of lifting the automatic stay is not analogous to an abandonment of property.

*Lange*, 347 B.R. at 671 (quoting *In re Ladd*, 450 F.3d 751, 755 (8th Cir. 2006)). The contention is meritless.

### 5. The Age and Health of the Hardisons

This contention gives rise to the hardship that so many face when they suffer financial setbacks. The Hardisons are not unlike countless debtors whose way of life is interrupted when stay relief hangs in the balance. While the Court feels compassion for this elderly couple, the difficult circumstances alone are insufficient to forestall relief for the creditor under the Bankruptcy Code.

### 6. Failure to Provide a Value in the MFR

Although Land Home technically violated Local Rule 4001-1 by failing to state what it believed to be the value of the subject property, that matter was corrected during the evidentiary hearing when it presented the Kanawha County Real Property Ticket. The mistake is immaterial at this point in the case.

### 7. Assignee Rights

To support the assertion that Land Home only has a right to payment of the amount listed in the POC, and not any amounts which have accrued post-petition, the Hardisons cite West Virginia Code §§ 55-8-8, 55-8-9, and certain decisions of the Supreme Court of Appeals of West Virginia.

The Hardisons contend that the Code sections prevent Land Home as servicer for an Assignee from exercising full repayment rights. Section 55-8-8 applies to actions involving decedents and is entitled "Joinder of Personal Representative of Decedent as Defendant in Action Under § 55-8-7; Judgment to Affect Only Estate of Decedent." Section 55-8-9 deals with notice of assignment and joinder, along with actions undertaken by an assignee and whether said actions must include the word "assignee." Neither Code section warrants the result sought by the Hardisons.

The cited decisions from the Supreme Court of Appeals are equally inapposite. First, none involve bankruptcy. Debt collection under state law is distinct from the bankruptcy procedures respecting filing and allowance of claims. In *State ex rel. Frieson v. Isner*, 168 W. Va. 758, 285 S.E.2d 641 (1981), the West Virginia Court awarded a writ of prohibition to prevent enforcement of a judgment. The central issue involved assignment of claims to collection agencies which were then essentially acting on behalf of the assignor and rendering legal services in violation of the prohibition against unauthorized practice of law. Similarly inapposite is *Lightner v. Lightner*, 146 W. Va. 1024, 124 S.E.2d 355 (1962), which dealt with an alleged lack of consideration between the original parties to the subject note. The only conceivable impact herein is the statement that "the assignee acquires no greater right than that possessed by his assignor, and he stands in his shoes." *Id.* That truism renders no assistance to the Hardisons. Nowhere in the *Lightner* or *Isner* cases is there anything stated that would prevent Land Home, as servicer, from exercising the full right to repayment it seeks from the Hardisons.

Again, the POC is a snapshot, simply a listing of the debt at the time of filing. A mortgage creditor's right to repayment continues until the note is cancelled. The assignee in this case was assigned the Mortgage and the Deed of Trust, not simply the claim filed in the Hardisons' bankruptcy case. As asserted by counsel for Land Home at the evidentiary hearing, this argument is indeed a meritless "red herring" which will be disregarded.

### 8. Administrative Claim for Post-Petition Accruals

The Hardisons next assert that Land Home may not add post-petition interest or fees to the total amount of their debt because Land Home did not file a request for an administrative claim for those amounts, nor did it file an amended POC. They assert Land Home may only use the figure of $371,186.22 in their request for stay relief. The Hardisons do not explain how they

14

arrived at that number other than writing that the POC "states there was Three Hundred Seventy-One Thousand, One Hundred Eighty-Six [sic] Dollars and Twenty-Two Cents ($371,186.22) due." [Dckt. 678, ¶ 17]

The Hardisons rely in support upon a decision rendered by my former colleague in the North. In that matter, the Court was presented with a question of valuation for collateral which the debtor was attempting to cram down in her Chapter 13 plan. *In re Nice*, 355 B.R. 554 (Bankr. N.D. W. Va. 2006). In the opinion, former Chief Judge Flatley discussed the method for determining the replacement value of collateral, held that the valuation date for cramdown purposes is the effective date of the confirmed plan, and, finally, ruled on potential specific case value adjustments for the situation before the court. The only mention of administrative claims comes within the discussion of the cramdown valuation date, and, specifically, the importance of the total amount of the allowed claim in determining a right to adequate protection. The Court stated that, "[w]hen a creditor fails to request adequate protection payments, if applicable, a creditor *may* also attempt to file an administrative claim . . . by arguing the decrease in value of the collateral due to depreciation was an actual, necessary cost[] and expense of preserving the estate." *Nice*, 355 B.R. at 563 (emphasis supplied). This statement reflects only that "the Bankruptcy Code contains adequate measures to compensate a creditor for the depreciation of its collateral before a plan is confirmed." *Id.*

Land Home thus correctly observes that the decision in *In re Nice* has no bearing here. Furthermore, nothing in the Bankruptcy Code appears to require Land Home to either file an application for an administrative claim or file an amended POC to reflect amounts accrued post-petition.

Additionally, Land Home was not required to amend its POC to reflect post-petition

15

accruals; in fact, it is expressly prevented from doing so by the Bankruptcy Code. Proofs of claim are governed generally by *Federal Rules of Bankruptcy Procedure* 3001, 3002, and 11 U.S.C. §§ 501 and 502. *Rule* 3002.1 applies in Chapter 13 cases and is therefore inapplicable here. Creditors submit the National Official Form 410 to assert their claims. Form 410 instructions state that the claim amount is "as of the date the case was filed." Furthermore, section 101(5) of the Bankruptcy Code defines a claim as "a creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy." 11 U.S.C. § 101(5).

   The essence of a proof of claim is that it memorializes the debt owed to the creditor *at the time of filing*. Thus, there is absolutely no requirement that a creditor update the proof of claim to reflect post-petition arrearages. A creditor's remedy for recovering accrual of post-petition arrearages is exactly what Land Home has availed itself of here: the filing of a Motion for Relief from Stay. Importantly, a proof of claim may not be amended to include post-petition amounts. *In re Workman*, 373 B.R. 460, 464 (Bankr. D.S.C. 2007) ("This court and others have allowed creditors to amend timely filed proofs of claim when the amendment is in the interest of justice. . . . An amendment . . . should be freely allowed when the purpose . . . is to cure a defect in the claim as originally filed or to describe the claim with greater particularity.") (internal citations and quotation marks omitted). Courts have held that they "must scrutinize post bar date amendments to timely filed proofs of claim to insure that the creditor is not seeking to file a new claim 'under the guise of amendment.'" *Miller v. ChanneLinx, Inc. (In re ChanneLinx)*, 317 B.R. 694, 698 (Bankr. D.S.D. 2004) (quoting *United States v. Int'l Horizons, Inc. (In re Int'l Horizons, Inc.)*, 751 F.2d 1213, 1216 (11th Cir. 1985)); *see also Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 133 (2d Cir. 2005). The Court rejects the Hardisons' argument.

### 9. Valuation of the Collateral

Initially, the Court expresses puzzlement at the lack of an appraisal in this matter. It seems that mechanism might have been the quickest method to determine the propriety of a lifting order. Absent resort to that common tool in this setting, the Court notes that the potential difference in value in this case is approximately $231,200. The Hardisons, at the outset of their case, asserted that the value of their home was $800,000. According to the most recent tax value propagated by Land Home, the value of the property is around $568,800.

The Hardisons rely on *United Carolina Bank v. Hall*, 993 F.2d 1126 (4th Cir. 1993). The *Hall* case dealt, again, with cramdown issues in a Chapter 13 case, and, more specifically, the appropriate amount of interest paid for the benefit of the secured creditor. *Hall*, 993 F.2d at 1127. The case does not establish, much less mention, that the appropriate valuation for collateral in a stay relief context is measured as of the date of filing. The only mention of a valuation date is that contained in 11 U.S.C. § 1325(a)(5)(B)(ii), which states the requirements for confirmation of a Chapter 13 plan.

Land Home supports its position with an unpublished decision from the United States Bankruptcy Court for the Middle District of North Carolina. The bankruptcy court there analyzed an "analogous provision," § 506(a), to determine collateral valuation in a stay relief context. *In re Deep River Warehouse, Inc.*, No. 04-52749, 2005 WL 1287987 (Bankr. M.D.N.C. Mar. 14, 2005). Generally, "the two methods for valuing real property within the context of a motion for relief from the automatic stay are the purchase method and the foreclosure method," and "[w]hether to choose the purchase method valuation, a foreclosure valuation, or some other standard depends on the particular circumstances of a case." *Id.* at *8. Furthermore, as to the date of the valuation, the court noted as follows:

17

> [I]t is appropriate in the context of a motion seeking relief from the automatic stay to value the property subject to the creditor's claim as of the date of the hearing inasmuch as the hearing date provides the best approximation of the extent of the debtor's equity in the property that exists to adequately protect the creditor should its motion be denied.

*Id.* A review of the available authorities demonstrates that the proper date for valuation of collateral in the context of a Chapter 7 adequate protection determination is "as of or near the date of the final hearing on the motion [for relief from stay]." *In re EM Lodgings, LLC*, 580 B.R. 803, 809 (Bankr. C.D. Ill. 2018); *see also In re Coates*, 180 B.R. 110, 119 (Bankr. D.S.C. 1995) ("[S]etting the valuation on the date of the hearing would seem to be the most commercially reasonable date for valuation purposes and this Court finds that the collateral . . . should be valued as of the date of the hearing."). Alternatively, Courts have held that the proper valuation date is the motion for relief filing date. *See, e.g.*, *In re Waverly Textile Processing, Inc.*, 214 B.R. 476, 497 (Bankr. E.D. Va. 1997); *In re All. Well Serv., LLC*, 551 B.R. 903, 908 (Bankr. D.N.M. 2016).

In any event, the Court need not choose between the two approaches here. Fourteen years have passed between the petition date and the present, and the few months which have elapsed between the MFR filing date and the hearing date are of no consequence. Accordingly, the Court concludes the valuation benchmark for stay relief purposes is best exhibited by the $568,800 value appearing on the Kanawha County Real Property Ticket.

### 10. Miscellaneous Contentions and "Cause" to Lift the Stay

A few other miscellaneous contentions deserve treatment. First, *Federal Rule of Bankruptcy Procedure* 3002.1 applies in "Chapter 13 case[s] to claims (1) that are secured by a security interest in the debtor's principal residence, and (2) for which the plan provides that either the trustee or the debtor will make contractual installment payments." Fed. R. Bankr. P. 3002.1. The Rule requires the holder of the claim to submit notices detailing any change to the payment

amount or any fees or expenses incurred in connection with the claim after filing. The Rule does not apply here. Prior to the Hardisons' conversion to Chapter 7, a Chapter 13 plan had never been confirmed. Conversion occurred on December 10, 2013. Even if the mortgage holder had been required to file these notices during the pendency of the Chapter 13 case, regardless of the lack of a confirmed plan, its duty to do so was extinguished at the time of conversion.

The remainder of the Hardisons' contentions against stay relief generally pertain to the amount listed in the MFR as the outstanding balance owed on their mortgage. For example, they quarrel with the amount of late fees charged, contending they violate West Virginia law. They also continue to assert that there is enough equity in the subject property to defeat Land Home's request for stay relief.

Land Home maintains that, regardless of any reduction in the mortgage balance, the Hardisons do not have equity in their home. Furthermore, Land Home emphasizes what this Court considers to be the most important consideration: the Hardisons have not made a single payment on their mortgage in fourteen years.

Considering the value of the home, the amount of the POC (to which the Hardisons never objected) and the loan payment history, stay relief is warranted. At least two reasons supporting this result are that (1) Land Home lacks adequate protection, and (2) the Hardisons have egregiously defaulted on the repayment terms by their inexcusable nonpayment of the mortgage. Again, the property is valued at approximately $568,800. Inasmuch as the Hardisons own only a one-half interest in the property, the value of their interest is $284,400. Assuming the Court considered only the amounts due and owing as of the filing date (as memorialized in the POC), there is little to no equity. According to the documents attached to the POC, the principal due at the time of filing, without considering *any* post-petition arrearages, was $290,290.05. That

19

number alone eclipses the value of the Hardisons' interest in the subject property. No further analysis is necessary.

Moreover, given the shocking lack of payment history, the Court would nevertheless find "cause" under § 362(d)(1). Consequently, Land Home has met its burden for stay relief, and the Hardisons have failed to rebut the same.

### III.

Section 362(d) governs requests for relief from the automatic stay. Relief is proper when the movant can show "cause," which includes lack of adequate protection, along with other factors. Land Home has demonstrated both a lack of adequate protection and a fourteen-year record of the default on the subject loan. This regrettable saga must come to a close. Accordingly,

**IT IS ORDERED** that Land Home's Motion for Relief From Stay [dckt. 623] be, and is hereby, **GRANTED**.